1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10

11

12

13

In the Matter of the Extradition of

FERNANDO GAMBOA HOWARD,
aka OSVALDO RICARDO ROMANDIA

)
)
)
)
)
)

Case No.  2:15-mj-00627-NJK

14      Fernando Gamboa Howard appeared before the Court on November 17, 2015, on a Complaint

15  in this case which seeks his extradition to Mexico pursuant to a treaty of extradition between the United

16  States of America and Mexico.  Docket No. 1.  The Complaint alleges that criminal charges have been

17  brought against Gamboa Howard in Mexico for the crime of Aggravated Homicide.  *Id.* at 3.  The Court

18  conducted an identity hearing and detention hearing on November 17, 2015, and set an extradition

19  hearing for February 2, 2016.

20      **A.      Identity Hearing**

21      The Court is required to determine whether the party before the court is the party named in the

22  extradition complaint.  *Hooker v. Klein*, 573 F.2d 1360, 1367 (9th Cir. 1978).  Whether the person

23  before the court is the accused is part of the magistrate judge's probable cause analysis.  *Manta v.*

24  *Chertoff*, 518 F.3d 1134, 1143 (9th Cir. 2008) (citing *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir.

25  1986)).

26      At the hearing, the United States presented the testimony of Gayle Johnson, a forensic scientist

27  with the Las Vegas Metropolitan Police Department (LVMPD).  After her certification as an expert,

28  Johnson testified that she compared the fingerprints on the card admitted into evidence as Exhibit 1

1   (known fingerprints of the person appearing in court) with the fingerprints on the card admitted into

2   evidence as Exhibit 2 (the October 10, 2000, fingerprints of the person charged in Mexico with

3   Aggravated Homicide and sought by Mexico pursuant to its treaty with the United States).   Johnson

4   determined that the prints were a definite match, meaning that the fingerprints in Exhibit 1 belonged to

5   the same person as the fingerprints in Exhibit 2.   Johnson further testified that she compared the

6   fingerprints in Exhibit 1 with the fingerprints  admitted into evidence as Exhibit 3 (fingerprints from

7   Mexico taken in October 2005 from Fernando Gamboa Howard), and those two sets of fingerprints also

8   belonged to the same person.   Finally, Johnson testified that she compared the fingerprints in Exhibit

9   1 with the fingerprint admitted into evidence as Exhibit 4 (a California Department of Motor Vehicle

10  record for the person appearing in court) and determined that the fingerprints in Exhibit 1 belonged to

11  the same person as the fingerprint in Exhibit 4.   Johnson testified that the quality of the fingerprints were

12  sufficient to make the identification, and she expressed no hesitation in the identifications that she made.

13  She testified, unequivocally, that the fingerprints in Exhibit 1 came from the same source as Exhibit 2,

14  3 and 4.[1]

15      The United States lodged with the Court a packet of self-authenticating documents from the

16  Mexican government in support of its request for extradition.   Within the documents is the fingerprint

17  card that was admitted at the hearing as Exhibit 2.   Also within the packet, the Mexican government

18  represents that the fingerprints on that card are the fingerprints of the person charged with Aggravated

19  Homicide, whom the Mexican government requests extradited pursuant to the treaty.   Also within the

20  documents is a photograph, admitted into evidence at the hearing as Exhibit 5, of Gamboa Howard, the

21  person charged with Aggravated Homicide in Mexico. Gamboa Howard, through counsel, admitted that

22  the photograph is one of him that was taken in the United States, long after the charges were lodged in

23  Mexico.   Gamboa Howard argues that the Court should decline to find that he is the person charged in

24  Mexico, as the fingerprints at issue were taken slightly more than a week before the charges issued.

25  Additionally, Gamboa Howard argues that the fact that a picture of him taken in the United States made

26

27
        [1]The Court notes that the pictures on Exhibits 2, 3, and 4 all appear to be pictures of the person who
28  appeared in Court on the Complaint.

2

1   its way into the packet prepared by the Mexican government is suspicious, and goes against a finding

2   that he is the person charged.  In response, the United States argues that the packet states that Gamboa

3   Howard was brought in on other charges in Mexico prior to being charged in the Aggravated Homicide,

4   which accounts for the earlier fingerprints.  Finally, the United States argues that the Mexican authorities

5   have been diligent in investigating Gamboa Howard's whereabouts in the years since he was charged

6   with the Aggravated Homicide, including locating a picture he had taken in the United States.

7         Of the small number of courts to address the issue regarding what standard must be applied at

8   an identity hearing, most have applied a probable cause standard.  *United States v. Saldana-Beltran*, 37

9   F. Supp. 3d 1180, 1186 (S.D. Cal. 2014).  Although the federal probable cause standard applies, the

10   probable cause finding need not be "predicated upon evidence that would be admissible at a preliminary

11   hearing or before a grand jury in the United States."  *Zanazanian v. United States*, 729 F.2d 624, 626

12   (9th Cir. 1984) (internal citation omitted).

13         The Court has carefully considered the evidence presented at the hearing, as well as the

14   arguments of counsel.  The Court finds that probable cause exists to support the finding that Gamboa

15   Howard, as he appeared in court, is the same person who was charged with Aggravated Homicide by

16   the Mexican authorities.  The Court relies upon Johnson's clear and uncontroverted testimony regarding

17   the fingerprints, as well as the photographs on the fingerprint cards and in Exhibit 5.  The Court

18   therefore finds that the person charged in the Complaint in this Court is identified as the Fernando

19   Gamboa Howard charged with Aggravated Homicide in Mexico and sought by the Mexican authorities

20   under Mexico's extradition treaty with the United States.

21   **B.   Detention Hearing**

22         "The primary concern in an international extradition matter is [to ensure the delivery of] the

23   extraditee to the requesting nation."  *Matter of Extradition of Nacif-Borge*, 829 F.Supp. 1210, 1213

24   (D.Nev. 1993).  Very little statutory guidance exists, however, on the issue of bail or release pending

25   future proceedings in extradition matters.  *Id*.  The statute that governs international extradition

26   proceedings, 18 U.S.C. § 3184, makes no provision for bail.  Further, the Bail Reform Act does not

27   apply to international extradition matters because, by its own terms, it applies only to people who are

28   charged with committing crimes against the United States.  See 18 U.S.C. § 3141.

1    There is a presumption against bail in extradition cases. *In Matter of Requested Extradition of*

2 *Kirby*, 106 F.3d 855, 858 (9th Cir. 1997) (citing *Wright v. Henkel*, 190 U.S. 50, 63 (1903)).   Although

3 it is unusual and extraordinary, however, it is not impossible to obtain bail in an international extradition

4 case.   *Nacif-Borge*, 829 F.Supp. at 1214.   To obtain bail, the extraditee must show by clear and

5 convincing evidence (1) that one or more "special circumstances" exist that justify his release; and (2)

6 if special circumstances exist, whether the extraditee poses a risk of non-appearance or danger to the

7 community.  *Id*. at 1215.

8    Here, the United States submits that Gamboa Howard is a flight risk and a danger to the

9 community.   Docket No. 6 at 7.   It further submits that no "special circumstances" exist that would

10 justify bail in his case.  *Id*.   The United States, therefore, asks the Court to detain Gamboa Howard

11 pending extradition proceedings.  *Id*.   Gamboa Howard, for his part, has not responded to the United

12 States' request and has not asserted any special or extraordinary circumstances which would support a

13 request for bail pending extradition.

14    Accordingly,

15    **IT IS HEREBY ORDERED** that FERNANDO GAMBOA HOWARD be detained pending his

16 extradition hearing, on February 2, 2016.

17    **IT IS FURTHER ORDERED** that FERNANDO GAMBOA HOWARD is committed to the

18 custody of the United States Marshal or a designated representative for confinement in a corrections

19 facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody

20 pending appeal.   GAMBOA HOWARD must be afforded reasonable opportunity to consult privately

21 with defense counsel.

22    IT IS SO ORDERED.

23    DATED: November 19, 2015.

24

25    _____

26    NANCY J. KOPPE
    United States Magistrate Judge

27

28

4